## No. 10,796.

### J. W. GALLIHER VS. CHAS. DAVIDSON ET AL.

Where the mortgage debtor, in anticipation of the foreclosure of the mortgage by the first mortgage creditor, consents to his taking possession of the mortgaged property and cultivating it on his own account, he will, as to his responsibility to other mortgage creditors, be treated as the keeper of the premises.

The crop raised by him will inure to the benefit of the mortgage creditors. He will be entitled, however, to be reimbursed for crop advances, and repairs on the plantation rendered necessary to preserve it from decay and injury.

The crop raised by said party, so placed in possession, must be sold with the property as a part of the mortgaged premises.

Where a party is placed, as above stated, in possession of the mortgaged property, and afterward forecloses his mortgage, the sale under judicial process can not be construed as a conventional sale and thus extinguish his mortgage by confusion.

Where a junior mortgage creditor bids on the mortgaged property, and his bid is rejected by the sheriff, and he afterward brings a suit against the seizing creditor and sheriff for damages to the amount of his debt, for an irregularity in the sale, which he alleges occasioned the loss of his debt, he recognizes title in the adjudicatee at the sheriff's sale and abandons his right to be placed in possession of the property as the highest and best bidder.

A PPEAL from the Ninth District Court, Parish of Concordia. Young, J.

*Steele & Dagg* for Plaintiff and Appellant:

1. The sale of a plantation without the "lease, use and possession" thereof, and without the "growing crop on said plantation" does not comply with the law, and therefore is not a judicial sale. C. P. 656; C. C., Arts. 467, 3282.

Galliher vs. Davidson et al.

2. Irregularity in a public sale may be waived by the owner in so far as his own interests are concerned, but such waiver does not affect the rights of others. C. C., Art. 11; Lawrence vs. Young, 1 An. 297.

3. When the mortgage creditor becomes the owner of the thing mortgaged, his own security is extinguished by confusion. C. C., Art. —; Murphy vs. Ins. Co., 33 An. 454: 34 An. 926, 1086. But it requires a judicial sale to enable the purchaser to get a title clear of incumbrances. Ayraud vs. Babin, 7 N. S. 479.

*Luce & Lemle* for Defendant and Appellee:

1. The sheriff's sale cleared the property of all mortgages.

2. The sheriff's sale was not acquiesced in by the mortgage debtor, and even on plaintiff's own petition, there was no extinction of defendant's mortgage by confusion.

3. The mules, etc., purchased by Charles Davidson and placed by him on the Roseland plantation, and the crop cultivated by him on said plantation at his own expense, in his own name, at his own risk and for his own benefit, was his individual property, in no way liable for A. P. Campbell's debts.

4. The property of a third person on the mortgage premises, form no part of the mortgage premises and can not be held for the mortgage debt. 28 An. 761, 762; 31 An. 734; 24 An. 129; 23 An. 141. To avoid a judicial sale, plaintiff must allege and prove injury. 31 An. 840; 6 An. 61; 8 An. 503; 12 An. 271; 10 An. 272, 752; 11 R. 503; 21 An. 380; 31 An. 174; 13 An. 213; 39 An. 269.

5. The evidence clearly discloses that the plaintiff has suffered no injury, as the property on the day of sale, since and now is worth considerably less than the first mortgage of defendant Davidson.

6. The court will not lend their aid to the annulment of titles, where parties seeking their interposition can not possibly seek relief from the granting of the remedy they invoke. 31 An. 840; 6 An. 61; 8 An. 503.

7. If the sale to defendant is void for any cause, and title did not pass to him, then his mortgage will revive, with the rank it had on the day of sale, and it will be relieved from all the effect of confusion and extinguishment, resulting from his having acquired the ownership of the thing mortgaged. 2 La. 551; 8 An. 462; 13 An. 601; 30 An. 1307; 31 An. 839; 33 An. 898; 39 An. 366.

8. If it be held that the growing crop, etc., on the plantation on the day of sale, the property of Charles Davidson was a part of the mortgage premises, the first mortgage and the amount expended by Davidson up to the day of sale amounted to about $45,000, and exceeds the amount of $40,000 plaintiff alleges he would have bid.

9. The plaintiff bases his action upon an alleged bid, and his evidence shows that his attorney was not authorized, nor ready to comply with his bid, and suffered no injury because of its refusal.

10. Plaintiff can not complain of Davidson's use and occupancy of the Roseland plantation, as the rents and revenues of the plantation were seized and sold, and purchased by Davidson.

11. The plaintiff does not sue nor demand the rescission of the sheriff's sale because illegal, but sues to enforce a mortgage.

The opinion of the court was delivered by

McENERY, J. The plaintiff held the second mortgage and the defendant the first mortgage on the Roseland plantation, situated in the Parish of Concordia.

The defendant, the owner of the first mortgage, proceeded *via ordinaria* to foreclose his mortgage, obtained a judgment recognizing his debt and rendering his mortgage executory, and issued execution thereon.

Prior to the suit, with the consent of the owner of the plantation, Davidson, the first mortgage creditor, took possession of the place. Finding it deficient in working stock, agricultural implements, and needed improvements, he supplied these deficiencies and proceeded to cultivate the place for his own account.

His acts were of a conservatory nature and were undertaken to prevent the plantation from deteriorating in value. He held no lease of the plantation, and there was no value attached to his occupancy of the plantation. By invitation of the owner of the plantation, Alexander P. Campbell, the defendant, Davidson, filed the suit to foreclose the mortgage.

Execution issued on the judgment, the property was seized and advertised for sale on June 8, 1889, and the defendant, Davidson, bid the same in for $32,000, and it was adjudicated to him.

The growing crop was omitted from the advertisement. It was specially stated in the advertisement that the growing crop was not to be sold.

There was no mention in the advertisement of the sale of the plantation having been leased to Davidson, and that it would be sold subject to said lease.

On the day of sale the plaintiff filed with the sheriff a written protest against the sale of said plantation without the growing crop thereon.

Plaintiff's attorney bid on said property the sum of $32,500.

This bid was rejected by the sheriff, as it was coupled with the demand that the growing crop should be sold with the plantation, and the purchaser demanded to be put in immediate possession.

Defendant's counsel instructed the sheriff to disregard the bid and to sell subject to Davidson's occupancy of the place for the current year. It is evident from the testimony of the plaintiff's attorney

that his bid was not a serious one, and the only object in bidding was to run the property up, not expecting it to be adjudicated to him. The plantation with all the property owned by Davidson, and which had been placed thereon by him, was, after the sale, offered to plaintiff for the price that he had bid on the plantation, part cash and balance on favorable terms of credit.

Hence, the plaintiff in his suit does not ask that the sale be avoided and the property adjudicated to him.

Plaintiff's object is to have the sale construed as a conventional sale between Davidson and Campbell, thus extinguishing by confusion the mortgage of Davidson, leaving the mortgage of plaintiff the first incumbrance.

The averment in the petition on this point is as follows: "That said adjudication was illegal, null and void, in so far as it purported to be a judicial sale, and that it does not have the effect of extinguishing the mortgage."

He avers that said sale, if acquiesced in by said Campbell, did have the effect of extinguishing Davidson's mortgage by confusion, leaving the mortgage of petitioner the first encumbrance on the plantation.

The acquiescence of Campbell in the judicial proceedings which he could not avoid, is not in itself sufficient to establish that there had been a consent sale between Davidson and Campbell previous to the institution of the suit to foreclose the mortgage.

There is no evidence in the record which establishes any sale between Davidson and Campbell of the Roseland plantation, for which the judicial proceedings were resorted to only as a means of conveying title.

On this point we quote from plaintiff's brief:

"We do not particularly contend that the evidence establishes that there was an actual conventional sale made from Campbell to Davidson of the Roseland plantation. We do say, however, that defendant's allegation of ownership of the crop, is reconcilable, under the evidence introduced, with no other theory. It seems to us then, that on the allegations of defendant's answer we would be bound to conclude that there was a conventional sale made early in the year and that its effect was to extinguish the first mortgage resting thereon."

The consent of the mortgage debtor that his creditor, to keep the place from going to decay, shall go on the place, make necessary

34

repairs, and cultivate it, is not such an agreement as to amount to a sale.

This agreement is lacking in all the essentials of a sale. R. C. C., 2439.

This agreement was not in writing, and even between the parties, would be null and void, unless actual delivery had been made and the sale confessed by the party when interrogated under oath. C. C. 2275, 2440.

The judicial sale then, was either null and void, or a valid sale. The plaintiff does not seek to annul the sale and divest the title of defendant. He does not attempt to disturb defendant's possession, except so far as to have his mortgage recognized as the only existing mortgage debt against the property, by reason of the alleged conventional sale of the mortgaged property to the defendant by Campbell, the mortgagor.

In the alternative prayer of the plaintiff, he asks for damages to the amount of his claim against the sheriff and the defendant for illegal and wrongful acts of both in the adjudication of said property to the defendant. In both allegations in the petition the plaintiff recognizes defendant's title and ownership of the property, by virtue of a consent sale, or as the purchaser at the judicial sale.

In the second ground of complaint it is alleged " that the defendant having moved said crop from the premises and placed it out of the reach of petitioner is responsible for its value which at the time of said sale was not less than $15,000. Avers that the refusal of A. W. Metcalf, the sheriff of your parish, and the said Davidson, to sell said Roseland plantation according to law, and the sale of said crop have damaged him in the amount of the A. P. Campbell debt, with interest and costs and attorney's fees above claimed, and that for this the said A. W. Metcalf, sheriff, and the said Davidson, are responsible to him *in solido* with the said Campbell."

Under the pleadings and the relief sought by plaintiff the only element of damages that can be considered is the value of the property appropriated by defendant which was subject to the two mortgages and which was not advertised and sold.

Davidson, the defendant, was not in possession of the plantation by virtue of any lease. His occupancy of the place was that of keeper.

He had not been appointed by the sheriff, but his presence on the

Galliher vs. Davidson et al.

place must be treated as though he had been appointed by the sheriff as such, and had been authorized by him to cultivate the place for the benefit of the seizing creditor. In anticipation of a seizure, Campbell, the mortgage debtor, had no right, to the prejudice of other mortgage creditors, to make a gratuitous disposition of the plantation to the creditor who was expected to make the seizure. The crop, therefore, made by Davidson on the plantation, was for the benefit of the mortgage creditors. He was entitled, however, to be reimbursed for all advances made for the raising of the crop, and for all necessary improvements on the place. The crop, therefore, formed a part of the mortgaged property, and should have been sold as such. It was appropriated by the seizing creditor and he is therefore responsible for it, and must account for it.

The value of the crop and expense of making it are shown in the record. It will therefore be unnecessary to remand the case.

The defendant in his testimony says that he deposited with Britton & Koontz $23,000, which amount was used in the cultivation, improvement and equipment of the Roseland plantation; $5500 of this amount was expended for stock and improvements, and the balance of the amount in the cultivation of the crop; 223 bales of cotton were produced on the plantation, which, with the cotton seed, realized $9900, leaving a considerable loss on the crop of 1889.

The plaintiff, therefore, has suffered no damage by the appropriation of the growing crop by the defendant.

On complying with his bid there can be no doubt that the plaintiff should have been placed in possession of the plantation, as the defendant had no lease of the premises. The plaintiff, however, has abandoned all intention of having his bid recognized and the property adjudicated to him.

The irrregularity in the sale is made the basis for an action for damages for the appropriation of the property by the defendant, omitted from the advertisement in the sale of the mortgaged property.

The evidence satisfies us that the mortgaged property brought its full value. We are of the opinion that the defendant suffered no damage by the forced sale of the mortgaged property.

Judgment affirmed.